UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

BENNIE L. HART,

      Plaintiff,

v.

GREG THOMAS, in his official capacity as
Secretary of the Kentucky Transportation
Cabinet,

      Defendant.

Case No. 3:16cv00092-GFVT

***Electronically Filed***

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The U.S. Supreme Court's free speech jurisprudence compels a finding by this Court that Kentucky's personalized license plates are private speech protected by the First Amendment. Without acknowledging the significant—and critical—fact that personalized license plates contain unique, individualized messages reflecting the owner's own speech, Defendant asks this Court to extend the government-speech doctrine beyond what the Supreme Court has said is likely "the outer bounds" of that doctrine. *Matal v. Tam*, 137 S. Ct. 1744, 1758 (2017). Defendant makes sweeping, unsubstantiated, conclusory statements about the role of personalized license plates, including the unsupported claim that "the fact remains that the government is speaking on behalf of its citizens" on personalized plates. Yet no evidence or law supports this declaration. Nor does

Defendant acknowledge the fact that Kentucky specifically asks the vehicle owner for their own meaning for the speech.

Defendant's legal reasoning is precisely the type of overreach the Supreme Court cautioned against when it stated, "If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Matal*, 137 S. Ct. at 1760. As discussed below, Defendant fails to properly apply the relevant factors for determining if speech is government speech and relies almost entirely on a single Indiana Supreme Court case without considering the distinctions therein and the other courts' more compelling—and contrary—analysis. Accordingly, Defendant's Motion for Summary Judgment ("Def.'s Mot.") should be denied.

## I.     Kentucky's personalized license plates constitute private speech and must be afforded First Amendment protection.

The Supreme Court has made clear that while the government may choose its own message, the free speech clause guards private speech, even where that speech occurs on government property or is in some way subject to governmental approval. *See Matal,* 137 S. Ct. 1744. As the Supreme Court explained in *Pleasant Grove City v. Summum,* forums for private speech have often been found "in situations in which government-owned property or a government program was capable of accommodating a large number of public speakers without defeating the essential function of the land or the program." 555 U.S. 460, 478 (2009). This is a fitting description of Kentucky's personalized plate program. With over 40,000 personalized plates on the roads in Kentucky (DN #49-1, Dep. of Ainsley Snyder 150:8-11), each bearing a unique alphanumeric combination chosen by the vehicle owner, it is evident that Kentucky's personalized plate program has successfully accommodated a massive number of speakers without defeating the program's essential function of raising revenue. The contrary conclusion is absurd. If over 40,000 unique

2

license plates are government speech, then the Commonwealth of Kentucky "is babbling prodigiously and incoherently." *Matal,* 137 S. Ct. at 1758.

The Supreme Court's speech cases demonstrate that in order for speech to be government speech, there must be significant governmental input, oversight, and imprimatur. For example, in *Johanns v. Livestock Mktg. Ass'n,* the Supreme Court held that privately created advertisements for beef products were government speech. 544 U.S. 550 (2005). These advertisements were created pursuant to a federal statute that called for the creation of a program of paid advertising "to advance the image and desirability of beef and beef products." *Id.* at 561. Congress and the Secretary of Agriculture wrote the guidelines for the content of these ads, Department of Agriculture officials attended meetings regarding the ads, and the Secretary of Agriculture could edit or reject any ad. *Id.* Since "[t]he message set out in the beef promotions [was] from beginning to end the message established by the Federal Government," the Court held that they were government speech. *Id.* at 560.

In *Summum,* the Court employed a factual and historical analysis*,* holding that privately donated permanent monuments in a public park are government speech. 555 U.S. 460. The Court cited a number of factors to reach this conclusion: governments have used monuments to speak to the public since time immemorial; parks have traditionally been selective in accepting and displaying donated monuments; parks would be overrun if they were obligated to accept all monuments offered by private groups; parks are closely identified in the mind of the public with the government that owns the land; and "[t]he monuments that are accepted ... are meant to convey and have the effect of conveying a government message." *Id*., at 472.

Ignoring this larger universe of free speech jurisprudence, Defendant's Motion analyzes this case entirely through the narrow lens of *Walker v. Texas Division, Sons of Confederate*

*Veterans, Inc.,* 135 S. Ct. 2239 (2015), in which the Supreme Court relied on its reasoning in *Summum* to rule that Texas specialty license plate *designs* are government speech. The Court's decision was based on the considerations deemed relevant in *Summum*, which Defendant here correctly summarizes as, "1) whether the government has historically used the medium to speak to the public; 2) whether the message is closely identified with the state; and 3) the degree of control the state maintains over the message conveyed." Def.'s Mot. at 6, citing *Walker*, 135 S. Ct. at 2247.

Defendant's Motion ignores the significant differences in form and function between personalized plate messages and specialty plate designs. Simply cutting and pasting from the analysis provided in *Walker* does not dictate the outcome of this case. Rather, a proper application of the *Walker-Summum* factors, including consideration of the Court's subsequent discussion in *Matal*, compels a finding that personalized plate messages are private speech. Defendant's Motion never cites *Matal* nor confronts the fact that the Supreme Court there remarked that *Walker* "likely marks the outer bounds of the government-speech doctrine," warning that it "is a doctrine that is susceptible to dangerous misuse" and therefore "we must exercise great caution before extending our government-speech precedents." *Matal,* 137 S. Ct. at 1760; 1758. Under an analysis of all of these factors and considerations, personalized license plates are not government speech.

### A. Personalized license plates in Kentucky have historically been used to communicate private speech.

Defendant provides no legal or factual basis to support his assertion that personalized license plates have been "historically used by the Commonwealth as a medium to speak to the public." Def.'s Mot. at 7. Defendant first attempts to support this point through an inapposite quotation from *Walker*: "the history of license plates shows that, insofar as license plates have conveyed more than state names and vehicle identification numbers, they have long communicated

4

messages from the state." Def.'s Mot. at 7, quoting *Walker*, 135 S. Ct. at 2248. Nothing in that quote references the speech used in personalized license plates. The Court was explicitly, and exclusively, discussing the use of the design by state governments to convey a message. *Walker*, 135 S. Ct. at 2244. Indeed, Defendant spends much of the brief describing the history of license plate *designs.* But not once does Defendant reference any historical use of the unique alphanumeric text on the license plate to convey the Commonwealth's message. In fact, the book on which Defendant relies, *License Plates of the United States,* makes no reference to personalized license plates at all. The motion is utterly devoid of reference to even a single instance of Kentucky, or any other state, communicating a message to the public through the specific alphanumeric combination on the plate.

While alphanumeric combinations are used for vehicle identification, that alone does not create a close association between specialty plates and the government. Driver's licenses are also government IDs, but the name of the driver that is printed on a license is certainly not a government message. Moreover, there is no suggestion that the clothing worn in the picture of a driver's license is government speech to the extent it contains a logo or saying on the clothing. In the realm of license plates, the plate numbers and letters are either randomly assigned or self-selected by the vehicle owner.

The facts here show that Kentucky vehicle owners, and not the state, have traditionally selected the messages for their personalized plates and used those plates to communicate private speech. Kentucky law defines "personalized license plate" as a license plate "issued with personal letters or numbers *significant to the applicant*." KRS 186.174(1) (emphasis added). By the plain wording of the state statute, it is not the government's views that are being expressed via the numbers and letters on personalized plates, but the private individual's. There are over 40,000

personalized plates on the roads in Kentucky. DN #49-1, 150:8-11. Each of these personalized license plates is unique, and a personalized alphanumeric combination may only appear on one plate in Kentucky at a time. KRS 186.174(5) (as renumbered in 2019). Kentucky's personalized plate statute, KRS 186.174, was first codified in 1976. Drivers in Kentucky have been permitted to pick their own personalized plate for more than four decades.

Given the statutory language, the significance to vehicle owners, and the extremely large number of participants, personalized alphanumeric plate combinations in Kentucky have not been historically used to communicate on behalf of the government. Rather, personalized plates traditionally have communicated private speech.

> **B.   Kentucky personalized alphanumeric combinations are closely identified with individuals, not the state.**

Defendant argues that personalized license plates are closely identified with the state "for the simple reason that the plates are produced and issued by the government with the state's name prominently displayed on the plate." Def.'s Mot. at 10. Once again, Defendant offers several inapt quotations from *Walker* to buttress this cursory conclusion. ("Consequently, persons who observe *designs* on IDs routinely—and reasonably—interpret them as conveying some message on the issuer's behalf." Def.'s Mot. at 10, quoting *Walker*, 135 S. Ct. at 2248 (emphasis added)). In particular, Defendant cites to *Walker* for the proposition that, "[a] person who displays a message on a [state issued] license plate likely intends to convey to the public that the state has endorsed that message," *Id.*, quoting *Walker,* 135 S. Ct. at 2249—but the same is not true for personalized plates, which the Supreme Court implicitly acknowledged. Almost immediately following that quoted sentence, the Supreme Court clarifies what "message" they're referring to, saying: "Texas's license plate *designs* convey government agreement with the message displayed." *Walker,* 135 S. Ct. at 2249 (emphasis added).

Unlike permanent monuments on government property or license plate designs, the alphanumeric combinations on personalized plates are associated with individuals. Motorists understand as a matter of common sense that when they see a personalized plate on a vehicle, the vehicle owner, not the state, has selected that particular combination. In *Mitchell v. Maryland Motor Vehicle Admin.,* 450 Md. 282, 294 (2016), Maryland's highest court considered the *Walker-Summum* factors and determined personalized plates were unlike specialty plates and therefore were private speech. As the *Mitchell* court wryly observed:

> A fellow motorist who [sees a profane personalized plate] might think: 'the MVA let you get away with that?,' or 'you pulled a fast one on the MVA!' Even these sentiments are rooted in an understanding that the vehicle owner, not the government, is the speaker, and that the speaker implicated the State in a private message that, surprisingly, the government permitted, but certainly did not endorse.

450 Md. at 295.

The Transportation Cabinet ("KYTC") does not create or suggest specific alphanumeric combinations for customers on personalized plates. DN #49-2, Dep. of Godwin Onodu, 94:12-19. Currently, individuals seeking a personalized plate must complete an online form that asks, "Please describe what your plate personalization means." DN #49-22, Personalized License Plate Application. Both the language of the statute and KYTC's practices establish that the selected messages are personal to the vehicle owner. *See e.g.*, DN #49-5, Dep. of Matthew Henderson, 13:7-12 (referencing combinations as something "of some significance" to requesters); DN #49-23, Dep. of Stephanie Williams, 19:11-20 (personalized plates "could be their name, it could be, you know, something personal to them that they want on their license plate."). Vehicle owners pick combinations that reference such topics as their names, initials, interests, jobs, anniversaries, birthdates, favorite sports team, among countless other subjects. *See e.g.*, DN #49-1, 157:1-11.

These letter and number combinations are chosen by and directly associated with individuals, not that state.

Finally, Defendant claims that "the public understands that every message, graphic, or logo placed on a license plate…has been reviewed, approved, and endorsed by the Commonwealth." Def.'s Mot. at 13. Yet Defendant provides no facts to support that statement. There is simply no reason to believe that any individual let alone "the public" believes that a unique message on a license plate has been endorsed by the Commonwealth. Conversely, a reasonable observer would view the plates as personal messages unique to the driver.

Based on how the Kentucky plate program operates and the messages themselves, the public generally understands that personalized plates are associated with vehicle owners.

### C. Vehicle owners largely control the message conveyed on personalized plates, not the state.

Defendant argues that Kentucky's "final approval authority" over personalized plate messages is akin to the degree of control exercised by Texas over specialty plate designs. Def.'s Mot. at 14. In *Walker*, the Supreme Court found that the state of Texas maintained a high degree of direct control over the messages it displayed on specialty plates. 135. S. Ct. at 2249. Texas law provided that the state had "sole control" over the design, typeface, and color of plates. *Id.* Pursuant to the Texas Administrative Code, the Department of Motor Vehicles Board had to approve every specialty plate design. *Id.* The Board had exercised this authority by rejecting at least a dozen proposed designs. *Id.* Because of this context, the Supreme Court found that "like the city government in *Summum,* Texas 'has 'effectively controlled' the messages [conveyed] by exercising 'final approval authority' over their selection." *Id.,* citing *Summum,* 555 U.S. at 478 (quoting *Johanns,* 544 U.S. at 560–561).

Likewise, the Sixth Circuit Court of Appeals ruled in a pre-*Walker* case that specialty plates in Tennessee were government speech precisely because the state selected the messages. *ACLU of Tennessee v. Bredesen,* 441 F.3d 370, 377 (6th Cir. 2006) ("So long as Tennessee sets the overall message and approves its details, the message must be attributed to Tennessee for First Amendment purposes."). The Sixth Circuit focused heavily on the legislative adoption of the specific license plate design: "The Tennessee legislature chose the 'Choose Life' plate's overarching message and approved every word to be disseminated. Tennessee set the overall message and the specific message when it spelled out in the statute that these plates would bear the words 'Choose Life.' *Id.* at 376.

Because private individuals in Kentucky select their own plate characters without input from the state, private speakers control plate messages. Each successive review process by the KYTC has allowed vehicle owners to select their own message.

At the time that Mr. Hart's IM GOD plate was reviewed, the state liberally approved plate applications. Ainsley Snyder, who was in charge of reviewing license plates for many years, was not ever aware of the state changing a letter or number combination on a personalized plate without the consent of the customer. DN #49-1, 149:9-12. Snyder is not aware of KYTC restricting plates to certain subjects, other than what is covered by the applicable statutes. *Id.* at 162:15-19. Snyder could not recall denying or voting to deny a plate based on the subject matter if it wasn't covered in one of the applicable statutes. *Id.* at 162:20-25.

Once Kentucky switched temporarily to a hierarchical process for plate review, KYTC continued to allow plates on nearly any subject, as long as the plate was not one of the few select subjects covered by state statutes. *See* DN #49-5, Dep. of Henderson, 87:19-25, 88:1-8 ("…they

were specifically attempting to apply the statute and the statute alone, so there was not another criteria or standard."). Godwin Onodu, who reviewed plates for KYTC, testified that was the case:

> Q …So my question, though, earlier was there are times when you as a reviewer and the other people in the Transportation Cabinet who review plates may not understand why the person or the customer wants a specific plate as long as it does not violate the statutes, it still gets approved?
>
> A That's my position.

DN #49-2, 100:11-18. Mr. Onodu was not aware of KYTC restricting certain types of subjects from appearing on personalized plates other than what was covered by the applicable statutes. *Id.* at #49-2, 100:19-25. The only real limiting factors then were whether the plate was restricted by KRS 186.164(9)(c)-(g), with a primary focus on whether the plates were religious or political.

Because Kentucky does not exercise direct control over the alphanumeric selections by owners in the same way that governments do with their own monuments and plate designs, personalized license plates must be considered private speech.

### D.  In sum, the *Walker* factors support finding personalized license plates are private speech

Looking at the totality of these factors, as well as the subsequent guidance from the Supreme Court in *Matal*, the alphanumeric text created by the owner on personalized license plate must be seen as private speech. Personalized license plates communicate the unique and individual speech of the customer who requests the specific plate—this is borne out by the intrinsic design of the personalized license plate and by the evidence developed in this case that personalized plate alphanumeric text combinations are created and requested by individual customers. Due to this unique and personal nature of these plates, they are closely identified with individuals, not the state, which even KYTC employees acknowledged in deposition testimony in this case. And it matters not that personalized plates must be approved by KYTC before they are printed and

allowed out on the road—ultimately, vehicle owners control the messages on those plates, not the state. Kentucky does not create or assign personalized license plates for Kentucky drivers.

Nevertheless, Defendant argues that the personalized license plates are government speech and "the government is speaking on behalf of its citizens." Def.'s Mot. at 1. But as the Supreme Court recognized in *Matal,* if this speech is government speech, then the state has given its imprimatur to a wide variety of truly bizarre positions. In 2016 alone, the same year that Mr. Hart's plate was denied, KYTC received over 8,000 personalized plate applications. See DN #49-25, List of personalized plates applied for in 2016. Among these were applications for messages such as: IMFAT, IMCRZ, SWAGGER, DUMCAR, BLOND, ILVMOM, FUNMOM, SPRDAD, and ZOMBEE. DN #49-25. That same year, KYTC also received applications for a number of plates that appear contradictory: GR8LFE and LOLIFE; TOFAST and SLOW; 2GOFAS and SLOWVO; NOGAS and EATGAS; VEGAN and BBQ4U; DROWSY and WAKEUP.

Much like the registered trademarks at issue in *Matal,* if *all* of this speech is somehow government speech, then the government is "babbling prodigiously and incoherently." 137 S. Ct. at 1758. The government would be saying "many unseemly things," "expressing contradictory views," and "providing Delphic advice to the consuming public." *Id.*

The personalized license plates fall squarely within the category of speech that the *Matal* court was concerned the government might try to claim as its own. It is no small wonder that Defendant made no references to the case in his Motion.

### E. If personalized plates are treated as government speech, Establishment Clause concerns will arise.

Mr. Hart maintains that personalized plates are private speech. As private speech, both non-religious and religious plates are acceptable options for drivers to choose and for the state to approve. However, the Defendant claims in his motion that personalized plates are government

speech and that all personalized plates are endorsed by the state. If this is the case, then Kentucky has created significant issues concerning the Establishment Clause of the First Amendment.

Defendant's Motion for Summary Judgment asserts—quite often—that the Commonwealth of Kentucky endorses every single message printed on every license plate on the road. ("If the person did not want the appearance of the State's *endorsement*, the person could simply display the private speech message they want on a bumper sticker next to the license plate." Def.'s Mot. at 10–11; "The Supreme Court made clear that members of the public who observe the graphics and messages on license plates believe that the State who issued the license plate is conveying and *endorsing* all of the graphics and messages on the license plate." *Id.* at 12; "[T]he public understands that every message, graphic, or logo placed on a license plate, whether it be a general-issue plate, a specialized plate, or a personalized plate, has been reviewed, approved, and *endorsed* by the Commonwealth*." Id.* at 13; "Kentucky did not violate Plaintiff's rights when it decided to not *endorse* the message the Plaintiff wanted to put on Kentucky's government-mandated, government-controlled, and government-issues license plates." *Id.* at 15) (emphasis added).

As the Supreme Court stated in *Summum*, "government speech remains constrained by the Establishment Clause of the First Amendment." 555 U.S. at 468. The Supreme Court has said, "There is a crucial difference between . . . private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect," and "government speech endorsing religion, which the Establishment Clause forbids." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302 (2000). Notably, "giving sectarian religious speech preferential access to a forum close to the seat of government (or anywhere else for that matter) would violate the Establishment Clause (as well as

the Free Speech Clause, since it would involve content discrimination)." *Capitol Square Review and Advisory Bd. v. Pinette,* 515 U.S. 753, 766 (1995) (plurality opinion).

Besides the endorsement issue, the Defendant's review process for religious plates poses the potential for excessive entanglement between the government and religion. If personalized license plates are government speech, KYTC places itself in the precarious position of approving selective religious messages and disapproving of others.

The Supreme Court has roundly criticized governmental involvement in the review of religious messages. "The First Amendment's Religion Clauses mean that religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State." *Lee v. Weisman*, 505 U.S. 577, 589 (1992).  In *Town of Greece v. Galloway,* the court determined, in part, that invocations at town board meetings could not be restricted to nonsectarian messages. 572 U.S. 565, 581 (2014). The Court said, "Government may not mandate a civic religion that stifles any but the most generic reference to the sacred any more than it may prescribe a religious orthodoxy." *Id.* (citing *Lee,* 505 U.S. at 590); *Sch. Dist. of Abington Twp. v. Schempp,* 374 U.S. 203, 306 (Goldberg, J., concurring). Indeed, the Supreme Court upheld the town's practice of inviting local clergy and others to offer an invocation at the start of town board meetings in part *because* the town's policy did not exclude nonbelievers or religious minorities from participating. The town "maintained that a minister or layperson of any persuasion, including an atheist, could give the invocation." *Id.* at 571. The Court also said, "If the course and practice over time shows that the invocations denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion… [that] would present a different case than the one presently before the Court." *Id.* at 583.

If KYTC views the speech on personalized license plates as government speech, it is then in the difficult position of making determinations as to which religious messages are acceptable. This not just a hypothetical question. Defendant's Rule 30(b)(6) witness, Commissioner Matthew Henderson, identified various plates that would be accepted or rejected based on their religious meaning and how he would review such plates. DN #45-5, 67:14-17; 69:15-25; 70:6-11; 70:23-25, 71:1; 71:8-13; 71:23-24, 72:1-6.

The proper framework for the court to view personalized plates is in the context of private speech. This alleviates the difficult Establishment Clause issues that arise under the government-speech doctrine.  Government officials risk violating the Establishment Clause if they review personal religious messages in order to determine if they are too religious. Review by government officials in order "to ensure the absence of a religious message…infringes precisely those Establishment Clause values at the root of the prohibition of excessive entanglement." *Ark Encounter, LLC v. Parkinson*, 152 F. Supp. 3d 880, 907 (E.D. Ky. 2016), *Agostini v. Felton*, 521 U.S. 203, 221–22 (1997) (*quoting Aguilar v. Felton*, 473 U.S. 402, 412–13 (1985), overruled on other grounds)).

Thus, given these Establishment Clause concerns, the totality of the *Walker-Summum* factors, and the Supreme Court's subsequent guidance on the government speech doctrine, this Court should find that personalized license plates are not government speech.

## II.     Defendant relies on a single flawed outlier case, rather than more compelling and persuasive holdings.

Defendant wrongly leans on *Comm'r of the Ind. Bureau of Motor Vehicles v. Vawter* to support his argument that personalized plates are government speech. 45 N.E.3d, 1200, 1205 (Ind. 2015). There, the Indiana Supreme Court found that 1) the state government had historically communicated its message through plate graphics, and 2) the primary function of a license plate

is vehicle identification by the state, and went on to conclude that any differences between standard-issue plates, specialty plates and personalized plates were secondary, and all constitute government speech. *Id.*

This perfunctory analysis stands in stark contrast to the more searching examination conducted by the Maryland Court of Appeals in *Mitchell v. Maryland Motor Vehicle Admin.,* 450 Md. 282. There, in a thorough and well-reasoned opinion, the court found that, "although license plates in general function historically as government IDs for vehicles, [personalized] plates display additionally 'a personalized message with intrinsic meaning (sometimes clear, sometimes abstruse) that is *independent of mere identification and specific to the owner.*'" *Id.* at 294 (emphasis added). The court distinguished standard-issue plates and specialty plates from plates with personalized text, where "private citizens, not the State of Maryland, create and submit prospective [personalized] plate messages." *Id.* The court continued, "So, historically, vehicle owners have used [personalized] plates to communicate their own personal messages and the State has not used [personalized] plates to communicate any message at all." *Id.*

The *Vawter* court also ignores, as does Defendant, a decision from the District Court for the Western District of Michigan, which held, a year prior to the Supreme Court's decision in *Walker*, that personalized plates are private speech. In *Matwyuk v. Johnson*, the District Court found that personalized plates "cannot reasonably be considered government speech" because, unlike specialty plates, "the individuals who apply for Michigan personalized license plates—not the government—determine the message." 22 F.Supp.3d 812, 823 (W.D. Mich. 2014). That court explicitly dismissed Michigan's claim that, because the speech at issue occurs on government property, and because the state must ultimately approve a personalized license plate request, the plates are government speech. *Id.* at 824. Instead, the court focused on the unique and personal

15

nature of the plates ("each personalized plate...is unique to the applicant because duplicates are prohibited") in holding that "the First Amendment applies to messages on personalized license plates." *Id*. Although this decision was issued prior to *Walker*, it was not abrogated by that decision, it is consistent with that ruling and the Supreme Court's First Amendment jurisprudence, and it remains good law.

Compared to the specific analysis and discussion comparing personalized plates to specialty plates that the *Mitchell* and *Matwyuk* courts undertook, the *Vawter* court misapplies the principles in *Walker* and is inconsistent with basic free speech jurisprudence.

First, while it is not controversial that license plates have "long been used for government purposes," as asserted in *Vawter,* the Indiana Supreme Court and Defendant here neglect to give proper consideration to the nature of the speech in question. While it is true that plate *designs* have historically communicated on behalf of the government, personalized plate alphanumeric combinations have not, and Defendant has not introduced a scintilla of evidence to the contrary. As recognized by the Maryland courts, and demonstrated by the facts discussed above, *see* Section I.A., these combinations on personalized plates have historically communicated vehicle owner messages. 450 Md. 282, 294.

Second—and closely related—the *Vawter* court found that alphanumeric combinations on personalized plates are "often closely identified in the public mind with the [State]." 45 N.E.3d at 1205, citing *Walker,* 135 S. Ct. at 2248 (quoting *Summum,* 555 U.S. at 472). It did so in part because personalized plates, like all license plates, are government IDs. The Maryland Special Court of Appeals said that the *Vawter* court "failed to appreciate that, notwithstanding that a message appears on a license plate, which always is a government ID, the unique and personal nature of the message makes plain that the speaker is the driver/owner of the vehicle, not the

16

government." *Mitchell v. Maryland Motor Vehicle Admin.*, 225 Md. App. 529, 566 (2015), *aff'd*, 450 Md. 282.

The *Mitchell* court correctly highlighted the difference between the public's perception of specialty plate *designs* in *Walker,* and personal messages by owners: "Unlike the license plate slogans that States use 'to urge action, to promote tourism, and to tout local industries[,]' vanity plates are personal to the vehicle owner, *and are perceived as such*." 450 Md. 282, 294 (quoting *Walker*, 135 S. Ct. at 2248) (emphasis added). The court recognized the specific nature of personalized plates and acknowledged the government's actual purpose for allowing them—to generate revenue, not to communicate government messages. In so deciding, the court explicitly rejected the Indiana Supreme Court's reasoning in *Vawter*: "[W]e reject the *Vawter* court's reasoning because vanity plates represent more than an extension *by degree* of the government speech found on regular license plates and specialty plates. Vanity plates are, instead, fundamentally different *in kind* from the aforementioned plate formats." *Mitchell,* 450 Md. at 296 (emphasis in original).

It is further unreasonable to claim that all of the more than 40,000 personalized plates on Kentucky's roads are government speech, due to the wide-ranging, unique, and often contradictory messages on those plates. *See* Section I.D. *supra*. Thus, the *Vawter* Court's conclusion that alphanumeric messages on personalized plates are government speech fails under the same *reductio ad absurdum* logic employed by the Supreme Court in *Matal*.

Similarly, the *Vawter* court's discussion of the third *Walker* factor, and Defendant's reliance thereon, ignores both important differences between specialty plates and personalized license plates, and the reality that the government often has some ability to regulate speech in many different contexts—but this does not necessarily mean the government is then speaking on its own

17

behalf. This is a fact sensitive inquiry which demands more thorough scrutiny and a more precise attempt to identify the medium of speech at issue than both the *Vawter* court and Defendant have given it. One cannot simply dismiss this analysis with a mere handwave and a bald assertion that "the government is speaking on its own behalf on a license plate." Def.'s Mot. at 16.

Unlike specialty plates, which are approved with state input via an administrative or legislative process, personalized plates are largely controlled by vehicle owners. The Maryland Court of Appeals determined in *Mitchell* that the state did "not exercise 'direct control' over the 'alphanumeric pattern' displayed on vanity plates in the same or similar way that Texas controlled specialty plates." 450 Md. 282, 296. The court said, "Although the MVA retains discretion to deny a prospective vanity message, its authority to recall vanity plates issued erroneously suggests that the MVA's control over vanity plates does not rise to the rigorous level required to transmogrify its regulatory approach into government speech." *Id.* The *Mitchell* court expressly rejected the Indiana Supreme Court's reasoning to the contrary. *Id.* The *Matwyuk* court, too, considered Michigan's role in reviewing and approving personalized license plates—"Michigan's only role in the process, other than collecting the license fee and issuing the physical plate, is to determine whether the proposed combination [satisfies the governing statute]"—and similarly found that this involvement did not transform these plates into government speech. 22 F.Supp.3d at 824.

At multiple points throughout his brief, Defendant asserts, without support, that "the *Mitchell* court's conclusion that the messages on personalized plates are not government speech seems to be based on Maryland's lack of control over approval of alphanumeric requests presented by motor vehicle registrants-applicants," which is, Defendant alleges, "sharply different from Indiana and Kentucky, where the state maintains final approval over all personalized plate requests." Def.'s Mot. at 12, *see also* Def.'s Mot. at 14. But this distinction simply does not exist.

If anything, Maryland's scheme is *more* restrictive than Kentucky's. *Compare* Maryland's personalized plate scheme discussed in *Mitchell* ("[A]n applicant may select a 'special, personalized registration number,' subject to the MVA's approval. [The plate may consist] of 'a message with at least 2 and up to 7 characters,' unless the chosen message 'has already been issued or ... is objectionable.' [...] Maryland regulations empower the MVA to deny or rescind vanity plates whose messages bear 'profanities, epithets, or obscenities.'" *Mitchell,* 450 Md. at 289) *with* Kentucky's personalized plate requirements ("Overview of Personalized Plate Program," DN #49 [Plaintiff's Motion for Summary Judgment] 4–10).

Further, it is of little significance that the state prints the plate itself and that it may consider the plates to be government property. Private speech is routinely permitted on government property. *See Miller v. City of Cincinnati*, 622 F.3d 524, 537 (6th Cir. 2010) ("[N]o one can reasonably interpret a private group's rally or press conference as reflecting the government's views simply because it occurs on public property."); *see also Matwyuk*, 22 F. Supp. 3d at 823 ("private speech is not transformed into government speech simply because it occurs on government property" (citing *Miller* at 537)).

First Amendment free speech analysis does not begin and end by simply asking whether the forum in which the speech takes place is government property; instead, courts look to the specific mode and method of expression. For example, the Supreme Court ruled in *Summum* that *permanent* monuments in public parks have historically communicated government messages. But this does not mean that all speech on the same property is *ipso facto* government speech. *Compare Summum,* 555 U.S. at 472 ("it is clear that the monuments in [the park] represent government speech ... [a]lthough many of the monuments were not designed or built by the City and were donated in completed form by private entities") *with Capitol Square Review and Advisory Bd. v.*

19

*Pinette*, 515 U. S. 753 (1995) (holding that a privately placed *temporary* cross display constituted private expression despite being placed on public property and being subject to government approval).

Under *Matal* and *Walker,* Kentucky's personalized license plates must be treated as private speech.

## **CONCLUSION**

For the above reasons, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ Patrick C. Elliott
Patrick C. Elliott*
Colin E. McNamara*
FREEDOM FROM RELIGION FOUNDATION
10 N. Henry St.
Madison, WI 53703
patrick@ffrf.org
colin@ffrf.org
*Admitted Pro Hac Vice*

Corey M. Shapiro
Heather L. Gatnarek
ACLU OF KENTUCKY FOUNDATION
325 W. Main Street, Suite 2210
Louisville, KY 40202
corey@aclu-ky.org
heather@aclu-ky.org

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2019, I filed this Brief Opposing Defendant's Motion for Summary

Judgment with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to the following:

Paul Kevin Moore
Kyle W. Ray
William H. Fogle
Kentucky Transportation Cabinet
Office of Legal Services
200 Mero Street
Frankfort, KY 40601
(502) 564-7650
kevin.moore@ky.gov
kyle.ray@ky.gov
william.fogle@ky.gov

　　　　　　　　　　　　　　　　　　　　/s/ Patrick C. Elliott_____

*Counsel for Defendant*　　　　　　　　Patrick C. Elliott