UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BENNIE L. HART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 3:16-cv-00092-GFVT-EBA |
| v. | ) | |
| | ) | |
| GREG THOMAS in his official capacity | ) | **OPINION** |
| as Secretary of the Kentucky | ) | **&** |
| Transportation Cabinet, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Like many states, Kentucky allows drivers to express themselves by choosing the letters or numbers on their license plates. Hence, the proliferation of any number of creative ways to show support for the University of Kentucky Wildcats.[1]

But this forum has limits. The Commonwealth does not allow drivers to say anything they want with a license plate message. That's fine, but the First Amendment also imposes limits on the Commonwealth. And in this case, as explained below, the Commonwealth went too far. That is why the Court will GRANT Plaintiff's Motion for Summary Judgment and DENY Defendant's Motion for Summary Judgment.

**I**

In 2016, Plaintiff Bennie L. Hart applied for a license plate through the Kentucky Transportation Cabinet's personalized license plate program. [R. 49 at 9.] This program allows

---

[1] Proof of this fact is hardly required. But for the curious, the plates applied for in 2016 alone included combinations such as: "UKCAT5", "KYCAT5", "KYCATT", "CATZ", "UKPHAN", "US4UK", "FEARUK", "UKBOY" and "2UKFAN". [R. 49-25.]

drivers to request, for a fee, "a license plate with personal letters or numbers significant to the applicant," subject to certain limitations. [K.R.S. § 186. 174(1); R. 49 at 9.] Plates with personalized alphanumeric combinations are commonly known as "vanity plates."[2] Kentucky also operates a specialized plate program through which individuals may obtain a license plate bearing various designs, such as the logo of their favorite sports team, or promoting an industry they support. These designs are proposed by groups and organizations and must comply with K.R.S. § 186.164(9). Specifically, § 186.164 requires:

> (c) The group, or the group's lettering logo, image or message to be placed on the license plate, if created, shall not discriminate against any race, color, religion, sex, or national origin, and shall not be construed, as determined by the cabinet, as an attempt to victimize or intimidate any person due to the person's race, color, religion, sex, or national origin;
> (d) The group shall not be a political party and shall not have been created primarily to promote a specific political belief;
> (e) The group shall not have as its primary purpose the promotion of any specific faith, religion, or anti-religion;
> (f) The name of the group shall not be the name of a special product or brand name, and shall not be construed, as determined by the cabinet, as promoting a product or brand name; and
> (g) The group's lettering, logo, image, or message to be placed on the license plate, if created, shall not be obscene, as determined by the cabinet.

K.R.S. § 186.164(9)(c)–(g). Section 186.174(6), which limits what drivers may request on their personalized plates, incorporates by reference—albeit rather clunkily—the requirements of the specialized plate program. K.R.S. § 186.174(6). Therefore, the alphanumeric combination on a vanity plate must comply with the foregoing five conditions, and in addition may not "conflict with or duplicate the alphabetical-numerical system used for regular license plates . . . and shall not contain a combination of more than six (6) letters of the alphabet and Arabic numerals, including spaces." *Id.*

---

[2] To avoid confusion between the specialized plate program, wherein Kentucky issues plates featuring various logos and designs, and the personalized plate program, wherein drivers request a specific alphanumeric combination to serves as their plate number, the Court will refer to the latter as "vanity plates" throughout this Order.

2

To ensure that each plate issued complies with the requirements of §186.164(9)(c)–(g), each requested alphanumeric combination is subject to review by Transportation Cabinet employees. [R. 49 at 2–4; R. 52 at 4.] Although the review process has evolved significantly over the years, in 2016, when Mr. Hart applied for and was denied the "IM GOD" license plate, each license plate request was first submitted to the county clerk, who then submitted it to one of two Transportation Cabinet employees. [R. 49 at 2.] Those Transportation Cabinet employees had the power to unilaterally accept or deny the plate request. *Id.* In making the decision whether to approve or deny a plate request, Transportation Cabinet employees were supposed to apply the requirements of §186.164(9)(c)–(g) and only approve plates that comported with the statute. The task proved to be easier said than done. Transportation Cabinet employees were given little to no guidance on how to interpret the statute, and therefore relied solely on "their own common sense of what would be religious or antireligious or not." [R. 52-1 at 5.] As a result, the statute was inconsistently applied. On March 11, 2016, Mr. Hart received a letter from the Transportation Cabinet in the mail that stated his request for an "IM GOD" vanity plate was denied "because it does not meet the requirements of KRS § 186.174 and 601 KAR 9:012. Section 5." [R. 49-20.] Although the Transportation Cabinet denied Mr. Hart's vanity plate request based on its reference to religion, a number of "god" plates have been approved, including "GODLVS", "TRYGOD", "1GOD", and "NOGOD". [R. 49-12.]

## II

### A

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

3

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**B**

At the outset, the Court must determine whether vanity license plates amount to government or private speech. This is paramount because "[t]he Free Speech clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). If vanity plates are government speech, then the Free Speech clause does not apply. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,

4

135 S. Ct. 2239, 2247 (2015) (quoting *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229 (2000)).

*Pleasant Grove City v. Summum* established the relevant framework for identifying government speech. 555 U.S. 460 (2009). In *Walker v. Sons of Confederate Veterans*, the Supreme Court utilized the *Summum* framework and concluded that specialized license plate designs constitute government speech. 135 S. Ct. 2239 (2015). Extending the Supreme Court's analysis from *Walker*, the Transportation Cabinet argues that vanity plates are likewise government speech because they "(1) have historically been used as a medium to speak to the public; (2) have been closely identified in the public mind with the state; and (3) have been controlled by the Commonwealth." [R. 52 at 5; *see Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2247 (2015).] In support of its argument, the Transportation Cabinet relies heavily on *Comm'r of Indiana Bureau of Motor Vehicles v. Vawter*, in which the Supreme Court of Indiana applied the foregoing *Walker* factors to hold vanity plates are likewise government speech. *See Walker*, 135 S. Ct. 2239; 45 N.E.3d 1200, 1210 (Ind. 2015).

Setting aside the fact that the *Walker* court was specifically "not [concerned] with the personalization program," this Court is not persuaded by the analysis in *Vawter*. *Walker*, 135 S. Ct. at 2244. Both the *Vawter* court and the Defendant fail to address important differences between the specialized licenses plates at issue in *Walker*, and the vanity plates at issue here. First, the Court disagrees that license plate *numbers*, separate and distinct from license plate *designs*, have historically been used to communicate messages from the State. *Walker*, 135 S. Ct. 2248 ("[T]he history of license plates shows that, insofar as license plates have conveyed *more than state names and vehicle identification numbers*, they long have communicated messages from the states.") (emphasis added). License plate designs have historically used

5

"slogans to urge action, promote tourism, and tout local industries." *Walker*, 135 S. Ct. at 2248. But vanity plates convey a "personalized message with intrinsic meaning (sometimes clear, sometimes abstruse) that is independent of mere identification and specific to the owner." *Mitchell v. Md. Motor Vehicle Admin.*, 148 A.3d 319, 326 (Md. 2016).

For the same reasons, the Court disagrees with the Transportation Cabinet's position that vanity license plates "have been closely identified in the public mind with the state." [R. 52 at 5.] Put differently, with this factor the Court considers "to whom the audience of the communication would reasonably attribute the speech: a private speaker or the public owner of the property on which the speech takes place." *Mitchell*, 148 A.3d at 326 (citing *Walker*, 135 S. Ct. at 2247). While plate *designs* are attributed by the populace to the state, vanity plates are not. The Kentucky personalization program, on its face, is concerned instead with the individual applicant's message. Even the statute establishing the personalization program in Kentucky describes vanity plates as consisting of "personal letters or numbers significant *to the applicant*." K.R.S. §186.174(1) (emphasis added).

As to the third factor, the Court acknowledges that Kentucky does exercise some degree of control over the content of vanity license plates. Every requested combination is subject to Transportation Cabinet review in order to ensure it complies with §186.164(9)(c)–(g). The Transportation Cabinet argues that because every alphanumeric combination issued on any vanity plate in Kentucky has been reviewed and approved by its employees, those plates have acquired a "stamp of approval" from the Commonwealth. [*See* R. 48-1 at 9.]

But if this is true, and the Commonwealth only approves vanity plates whose message it officially adopts and endorses, then the Commonwealth is "babbling prodigiously and incoherently;" and "saying many unseemly things." *Matal v. Tam*, 137 S. Ct. 1744, 1758 (2017).

6

The same year Mr. Hart was denied a plate reading "IM GOD", the Transportation Cabinet approved the contradictory plates "NOGAS", "EATGAS", "VEGAN", and "BBQ4U" among many others. [R. 49-25.] Under the Transportation Cabinet's logic, the Commonwealth is not only contradicting itself, but spewing nonsense. If the Court finds that vanity plates are government speech, then the Court would also be finding that Kentucky has officially endorsed the words "UDDER", "BOOGR", "JUICY", "W8LOSS" and "FATA55". *Id.*

In light of the foregoing, *Walker* "likely marks the outer bounds of the government-speech doctrine." *Matal*, 137 S. Ct. at 1760. Consequently, this Court finds that vanity plates are private speech.

**C**

Because vanity plates are private speech protected by the First Amendment, forum analysis applies. The Transportation Cabinet argues only that vanity plates are government speech not subject to forum analysis, and therefore makes no argument as to what type of forum might be at issue here. [R. 48-1 at 15; R. 52 at 13.] In contrast, Mr. Hart argues that license plates are either a limited public forum or a nonpublic forum, but in either case a speech restriction must be reasonable and viewpoint neutral. [R. 48 at 13.] Other courts that have considered the question have found that vanity license plates are a nonpublic forum. *See, e.g., Byrne v. Rutledge*, 623 F.3d 46 (2d Cir. 2010); *Matwyuk v. Johnson*, 22 F. Supp. 3d 812 (E.D. Mich. 2014); *Mitchell v. Md. Motor Vehicle Admin.*, 148 A.3d 319, 326 (Md. 2016). "[A] nonpublic forum is a government-owned property that is not by tradition or governmental designation a 'forum for public communication.'" *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010). A license plate is government property upon which Kentucky has allowed

some limited private expression in the form of vanity plates. Therefore, this Court finds that license plates, when made available for private expression, are a nonpublic forum.

Government restrictions on speech in a nonpublic forum are permissible provided they are reasonable and viewpoint neutral. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 at 806 (1985) ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose of the forum and are viewpoint neutral."). Whether a restriction is "reasonable" depends upon "the purpose of the forum and all the surrounding circumstances." *Id.* at 809. "[T]o survive First Amendment scrutiny, the restriction need not be the most reasonable or the only reasonable limitation imaginable. However, at a bare minimum, the law must be consistent with a legitimate [Government] interest." *Byrne v. Rutledge*, 623 F.3d 46 (2d Cir. 2010) (internal citations omitted). In assessing viewpoint neutrality, "two guiding principles emerge." *Byrne*, 623 F.3d at 55. "First, the government may . . . restrict content by prohibiting any speech on a given topic or subject matter. Second, however, once the government has permitted some comment on a particular subject matter or topic, it may not then regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Id.* at 54–55 (internal citations omitted).

Based on the facts of this case, § 186.174(1) is unreasonable as applied to Mr. Hart. The Transportation Cabinet argues that a statute banning religious reference is reasonable because it is necessary to support its legitimate government interest[3] in "promot[ing] highway safety" because "potentially controversial messages . . . could lead to confrontation or distraction on its

---

[3] The Transportation Cabinet also argues that the statute advances its interest in "avoid[ing] government association with ideas it would not be seen as promoting." [R. 14-1 at 13.] However, having already determined that vanity plates are private speech, the Court does not consider this as a legitimate government interest.

8

highways." [R. 14-1 at 13.] The Sixth Circuit has stated that avoidance of controversy is a valid ground for restricting speech in a nonpublic forum, because a nonpublic forum is not dedicated to general debate or the free exchange of ideas. *See United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 356 (6th Cir. 1998) (collecting cases). However, the Transportation Cabinet has been so inconsistent in its application of § 186.174 that it has ceased to be "consistent with [Kentucky's] legitimate government interest" in any way. If the Transportation Cabinet genuinely wants to avoid controversy on Kentucky's highways by preventing "promotion of any specific faith, religion, or anti-religion" from appearing on vanity plates, then it should have denied "IM4GOD", "ASKGOD", GR8GOD", "LUVGOD". But it did not. [R. 49-12.] Instead, the Transportation Cabinet has approved multiplate vanity plates featuring the word "god". *Id.* This suggests that the law as applied to Mr. Hart is neither reasonable nor viewpoint neutral. To allow such plates as "IM4GOD" and "LUVGOD" but reject "IM GOD" belies viewpoint neutrality. Regardless, the Court concludes that in this case, § 186. 174(1) is an unreasonable and therefore impermissible restriction on Mr. Hart's First Amendment rights.

### D

As a final matter, the Court turns to the additional arguments Mr. Hart makes in his Motion for Summary Judgment. [R. 49.] Specifically, Mr. Hart argues: (1) the prohibition on anything political included in § 186.164(9)(d) violates the First Amendment, and (2) the "good taste and decency" standard in 601 K.A.R. 9:012(5) violates the First Amendment. [R. 49 at 13, 20.] The Court finds these to be without merit. First, the record indicates that Mr. Hart's plate application was denied based on the language in § 186.164(9)(e), not (d). Likewise, the "good taste and decency" standard is not at issue in this case, because 9:012(5) is concerned with vanity

9

plates that are issued in error, and later recalled. *See* 601 K.A.R. 9:012 Section 5. Mr. Hart never received an "IM GOD" plate, and so that plate could not have been recalled. Finally, Mr. Hart challenges the facial validity of 186.164(9)(e) as applied to the personalization program. As a general rule, the courts should avoid unnecessary adjudication of constitutional issues. *See Ashwander v. TVA*, 297 U.S. 288, 346–48. (1936). Finding for Mr. Hart on his as applied challenge, the Court declines to rule on the constitutionality of § 186.164(9)(e) in general.

### III

Personalized license plates aren't just for UK fans. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Bennie L. Hart's Motion for Summary Judgment **[R. 49]** is **GRANTED**;

2. Defendant Greg Thomas's, in his official capacity as Secretary of the Kentucky Transportation Cabinet, Motion for Summary Judgment **[R. 48]** is **DENIED**; and

3. This case is **STRICKEN** from the Court's active docket.

4. Judgment shall issue promptly.

This the 13th day of November, 2019.

Gregory F. Van Tatenhove
United States District Judge